Ladies and gentlemen, please rise. The Honorable Appellate Court of the 3rd Judicial District of the State of Illinois is now in session. The Honorable Leo C. Brennan is diagnosed. Please be seated. Clerk will call the case. 325-0091, Henry, the estate of David Bennett, deceased. Hometown bank, in the past. He and his faculty, by Jennifer Craitlin, versus Lashena Creekley, the independent administrator of the estate of Carlson Creekley. David Brinson, individually. And Cassie Williams, individually. Columns, by Roland Evans. Ms. Frederick, you may proceed. Good morning. May it please the Court. Good morning. My name is Roland Edwards. I represent the appellants. Lashena Weekly, as independent administrator of the estate of Carlson Weekly. Davon Brinson, and Cassie Williams. These parties are the claimants in the probate that are below. Their claims stem from the August 4th, 2020, shooting in Chicago's Gold Coast. An attack that killed Carlson Weekly, and seriously injured two bystanders. The attack was set in motion by the decedent, Davon Bennett, who had placed a $100,000 bounty on the life of Carlson Weekly. Now, Davon Bennett was killed several months later, in November of 2020, in Atlanta, Georgia. At the time of his death, the claimants had no knowledge of the murder for hire plot. And the claimants did not know that the decedent had played any role in setting the events of August 4th into motion. Those facts emerged years later, in the 2023-2024 federal criminal trial, titled United States vs. Liggins, in which, for the first time, witnesses stated under oath that the shooting was orchestrated and incentivized by the decedent. By the time the claimants learned the truth, a probate estate had already been opened in Will County. Based on the misrepresentation that the decedent was a Will County resident. His own death certificate lists a Fulton County, Georgia residence. And that address, that Georgia residence, was provided by Natasha Chambers, the same administrator who petitioned for the opening of the Will County estate. Now, the record reflects that the decedent was living in Georgia full-time. He was out on bond on two separate felony cases in Fulton County, Atlanta, Georgia. And in both matters, he provided the Georgia court the same Fulton County address. The decedent was also at this time the sole member and manager of a Florida LLC called Get Back Gang LLC that listed a principal place of business in Atlanta, Georgia. Counsel, if I may interrupt you, there's ample evidence that Atlanta was a homicide, at least from your perspective. Yes. What about the case law that allows you to apply the discovery rule to this? To go back and say, you know what, I didn't find this out until years later. I still have a cause of action here. And the claims restrictions do not apply to me. Yes. With regards to that argument, Your Honor, it is our position that the probate court erred in disallowing the claims without considering the continuing civil conspiracy that was revealed after the decedent's death. So the conspiracy didn't end with the death of Weakley on August 4th, 2020, nor did it end with the decedent dying in November of 2020. His co-conspirators continued efforts to conceal the murder for hire plot from the law enforcement and from the public at large. And Mr. Edwards, that conspiracy started with, so you're alleging that not only did they or did Mr. Bennett put up that ransom or, excuse me, the contract, so to speak, but he did so to engrandize his music, to make his songs more popular. Correct. In fact, the decedent we've alleged in our complaint at law was part of a criminal enterprise of only the family that operate as a record label, and we've alleged as a criminal enterprise as well. And the decedent and Carlton Weakley had an ongoing rap beef that escalated in 2020, and it got violent and culminated on August 4th. So accepting all of that as true, and let's assume there was a conspiracy that in some contexts would toll a limitations period, for lack of a better way of putting it, all the reported cases that I'm looking at do not create an exception along any line for this two-year limitation for claims against an estate. Are you aware of any cases that have equitable tolling or however you want to put it? I mean, I get the desire to do it, but are there any reported cases that have done it? Well, sure. I think instructive on this issue is the Supreme Court's case in regards to the estate of Ellis, 236L2D. It's directly relevant because in that case, the Supreme Court recognized that concealment of wrongdoing can toll the probate deadlines when the claimant had no meaningful opportunity to discover fraud during the statutory period. Now, this case, Ellis— But that was an error, right? Pardon? Who was the claimant in Ellis? The claimant was the Shriners Hospital, and Ellis, the decedent, had executed a will in 1964 for the Shriners Hospital. And then in 1999, a will was executed later benefiting her pastor. And Shriners didn't know about the earlier one. Correct, and the pastor had significant intervivos transfers. Shriners didn't discover the earlier will or the pastor's misconduct until 2006, well after the probate period had expired. And so despite the expiration of the statutory period, the Supreme Court allowed the Shriners claim to proceed because the estate had been unjustly enriched by the concealed wrongdoing. The Supreme Court also found a Florida court case persuasive called Schilling v. Herrera and used that as an example to show that in a situation where a fraudulent will was discovered after the probate had closed, a tardy tort claim was allowed because the probate remedies had been foreclosed by fraud. So just like Ellis or Schilling, the appellants here had no meaningful opportunity to discover the decedent's involvement in the murder-for-hire plot until after the probate period had expired. Moving on, in addition to the equitable tolling principles in the Ellis case, the probate court failed to consider and erred in failing to consider that the claims brought on behalf of the estate of Carlton Weakley are brought on behalf of minors. Carlton Weakley's estate has three minors that were minors at the time of the action approved, and the complaint sets forth wrongful death claims. The wrongful death statute provides a wrongful death beneficiary under the age of 18 at the time of cause of action approved may file within two years after attainment of the age of 18. What about the case that says that a disabled adult, for example, that would not toll for two years? Well, I believe, Your Honor, you are referring to the Epstein case. And in that case, in that case involved a mother acting as a guardian for a disabled adult daughter. In that case, that mother was bringing an untimely child support claim under the Marriage Act. And so although the mother was relying on the 13-211 minor tolling statute to toll the limitations period, the court acknowledged that tolling for legally disabled persons may apply in other statutory contexts under, I believe it was the 13-201 through 13-210. But here it was inapplicable because the Marriage Act case did not fall under the enumerated exceptions for minor tolling or disabled tolling. So even though the court declined in Epstein to apply tolling, it did recognize the strength of some equitable tolling arguments as well. Moving forward, I want to get to the lack of an evidentiary hearing. The probate court erred in failing to hold an evidentiary hearing and denying discovery. And where an evidentiary hearing is required to resolve disputed facts, particularly those that bear on jurisdiction, a court abuses discretion by failing to conduct one. At the February 10th hearing, the appellants specifically requested an evidentiary hearing. That's in the record at page 11. Appellants also sought limited discovery. The probate court denied these requests as untitled. And this is significant because the estate, in their reply in support of their motion for disallowance, they included affidavits from several different individuals asserting untested factual claims about the decedent's domicile. So the appellants were at least entitled to test those new factual assertions through cross-examination of an evidentiary hearing and through some discovery. And I think the first district's decision in the estate of Bone illustrates that error. In Bone, the probate court at the trial level dismissed a claim solely based on the photographs that the estate had attached in their reply memorandum. Counsel, wasn't that case about a claim, though? It wasn't about a late claim. It was about a claim. It was about a claim, but it is still persuasive in that that party was still entitled to an evidentiary hearing based on those untested factual assertions. In this situation, the judge says you've passed the deadline, no hearing, no anything. And obviously, you're faulting that. But in that case, it was just simply we need to have a hearing because a hearing needs to develop the facts, wasn't it? That is correct. But also, with regards to a hearing and discovery, the same analysis applies to the issue of insurance. Section 1812C provides that the two-year bar does not bar actions to establish liability of the decedent to the extent that this – We specifically requested discovery. I know that, but did you request discovery to explore the availability of insurance, which is a specific exception to the two-year bar? That wasn't explicit, Your Honor, but this is still commensurate with the underlying facts below. Through discovery, that is something we would have asked. Through an evidentiary hearing, that is something we would have explored from the co-administrator, Natasha Chambers, as well. So I believe those arguments weren't forfeited because we specifically raised discovery in an evidentiary hearing. Finally, I want to get to the motion. The appellants put forth a motion to supplement the record to include for this court to take judicial notice and consider documents regarding the Georgia estate. Which wasn't opened until after you had a negative ruling in this case. That is correct. However, Georgia law allows tolling up to five years, Your Honor, and we had made a timely filing of the Georgia estate within that five-year period. Those claims remain active, and Georgia allows for a party to open up an estate for the sole purpose of initiating or continuing the personal injury litigation. We have an analogous statute here, 735 ILCS 54-13-209, that allows litigants to do the same. And so the significance of the Georgia estate is that we're asking this court to vacate the Illinois estate. And in doing so, there would not be any prejudice to either party. Both the claimants and the heirs of the Bennett estate can proceed in the Georgia estate, which is the decedent's true domicile. The probate court in Georgia has appointed a public administrator in that matter. So vacater simply restores this case to be formed with the actual jurisdiction. So there will be no harm. If there are any more questions. Isn't it fair to say that there's some assets in Illinois? I think it was up to $4,000 in personal assets. So there would be some jurisdiction to handle even an ancillary estate in Illinois, would there not be? Well, so that case goes with, I believe, so for one, the estate claims that in the petition, it states that, quote, contract rights for the production of intellectual property rights in the recording industry having uncertain value. That was listed in the. Obviously, the intellectual property rights are probably the most valuable asset in this estate. But I think there was some discussion of some personal items that run up to $4,000. So those $4,000 of personal property is not sufficient to confer jurisdiction alone. And that case that cites that is in regards to the estate of Jackson. Now, in that case, they allowed the estate to be open in Illinois because the decedent had changed his domicile to Illinois. However, they emphasize in that case, and that's, I believe, the fourth district, they said the small amount of personal property standing alone was not sufficient to confer jurisdiction. So wait a minute. I die in Illinois. I live in Illinois. I don't own any real estate. All I have is $4,000. I can't have an estate in Illinois? Absolutely. You live in Illinois. You die in Illinois. You were domiciled in Illinois. And that's sufficient. However, if you're not domiciled in Illinois, you don't die in Illinois. But maybe at your sister's house, you might have some personal effects. Those personal effects alone is not enough to confer jurisdiction. Under the Jackson case, as well as under the… Counselor, you're saying it's not enough to confer jurisdiction, or are you saying it's not enough to defeat your argument? It's not enough to defeat my argument, but it's also consistent with 755 ILCS 5461C, which states if a decedent has no Illinois residence and no Illinois real estate, jurisdiction lies in the county where the greater part of his personal estate is. And our argument is that that's Fulton County, Georgia. Isn't that really just a venue statute rather than a jurisdictional statute? I don't think it says jurisdiction. It doesn't, but in reading them both together between the jurisdiction statute stating, you know, a probate court may only be open in a state if the decedent was domiciled in Illinois or owned property in Illinois at the time. I think the 541C statute, reading them both together, Illinois is not the proper jurisdiction for the estate of the decedent to reside. I'm sorry I interrupted you, Justice Breyer. No, no. Thank you. That's about it. Thank you so much. Thank you, Mr. Edwards. You'll have an opportunity to reply. Ms. Friedland? Good morning, Your Honors and counsel. May it please the Court, my name is Jennifer Friedland, and I represent Natasha Chambers and Hometown National Bank, who are the co-independent administrators of the estate of Davon Bennett. The heirs to the estate of Davon Bennett are his three minor children. The issues on this appeal are not as complex as petitioners would have you believe. The facts regarding the barred claims are not in dispute. Petitioners' claims were filed nearly four years after Bennett's death and nearly three years after the claim deadline. I wanted to talk about the State of Ellis, which was raised in the opening argument, and why that case is inapplicable here. The State of Ellis is a Supreme Court case from 2009, and that case was not a case regarding a claim on an estate, but a petition to contest the will. So we're dealing with two different statutes. The statute here that we are dealing with, which is the filing of claims, 55 ILCS 5-18-1, states that a claim against the estate of excedent or award, whether based on contract, tort, statutory custodial claim, or otherwise, may be filed. So the statute we're working with here, which is 18-12 of the probate code, does apply to torts explicitly, whereas the court in Ellis regarding the petition to contest a will, that is a different scenario altogether. Petitioners do not claim that they lack knowledge of Mr. Bennett's death. Rather, they claim they didn't know the basis of the claims until well after the claims period. And I want to address the petitioner's claims, arguments I'll call them, against Ms. Chambers regarding her petition to open this estate. The implication of the allegation that she misrepresented the amount of her son's personal property or where he was domiciled is a bit preposterous given that, well, let's just say the implication is that she somehow knew that years and years later he would be, someone would testify in a federal court trial that he had conspired for murder to hire. The petitioners themselves did not learn about this until that court trial. So in terms of Ms. Chambers and any alleged wrongdoing by her, that just does not make sense to me. Just focusing on, set that aside. So Judge Garcia essentially ignores any concern as it relates to jurisdiction, focuses on 18-1 and out it goes, which is tempting as a trial judge. One can imagine it gets a case off the call, I suppose. But the jurisdiction issue raised wasn't that Ms. Chambers was participating in the conspiracy. It was that this claim that her son lived in the New Atlantic's residence was false. And I mean, it's allegations at this point, but from the trial court's perspective, he's being told that, look, the address for the bond, the address for the LLC, all these things are coming back to the same address in Georgia. And I realize we haven't ruled on the motion yet, but let's just say the judge has been told that there's even this YouTube video where I'm never coming back to Illinois, it's horrible, whatever. So, I mean, how does the trial court not address a potential jurisdiction issue before it reaches the 18-1 issue? Yes, so first of all, I will say, I don't know that he didn't, right? It was briefed. Can you find anything in the record to suggest that he did? Only because it was briefed in the response that the petitioners filed, and then we filed our reply, which did provide evidence. He didn't orally address that evidence. Of course, he didn't, that's not what the transcript says, and that's not what happened. But I don't know that he didn't read that and consider it. I'll say that for a second. I'm sorry, go ahead. He didn't use it in his ruling. He made that clear. I don't know that he made that clear. That he read it and came to some conclusion? It was very clear in his ruling that he didn't use that in his announcement. He did not announce that he had read all of the briefs. That's correct. But these issues were raised in the brief and on the motion to disallow the claim, and that motion was decided. Secondly, I was – Well, before you go any further than I apologize, in reading the – and I recognize there's things you can point to that you point to in your brief, that was pointed to the judge, the state identification card, the medical card, where his doctor is, things like that. But there's also this rather – I'm just going to call it compelling evidence on the other side. Don't you have to have some kind of a hearing to get to the bottom of this? I mean, she says, he says, it's jurisdiction. I mean, I recognize you say, well, the judge might have actually decided this and just forgot to say it, but how could he decide? How could he decide the credibility of the different evidence without a hearing? Because in Illinois jurisdiction, there can be one or the other. There's domicile, which I admit was not decided, and that would be an issue of fact. But there's also personal property. And the fact that not only the petition contained, I think it was $4,000 of Mr. Bennett's personal property located in Illinois, our reply brief also showed that he had a bank account here and then Mrs. Chambers' affidavit that he had personal property at her residence. I don't think that there's a dispute that he had some property in Illinois. But, I mean, even the bulk of his – the most valuable asset, as far as I can tell, would have been the intellectual property, and that goes along with his domicile. I don't know how you can't get to a domicile inquiry. Well, even if it is an ancillary, there is jurisdiction here because there is personal property here. There's some jurisdiction, sure. I think there might be, but I don't see how you can ignore the question of whether he lived in Georgia. So if he's domiciled in Georgia and there's some property here and you have this ruling disallowing the claim, what does the disallowed claim go to? Does it go to the $4,000 of property he happens to own in Illinois? Or does it go to everything? Well, we've been operating this estate for four years here, and the claim was not brought timely, so it goes to everything. When you say it wasn't brought timely, that assumes that 18-12 applies, and it only applies, at least in our argument, it only applies if he lived in Illinois. Correct, right. So the 18-12... So we don't know if it's timely, right? It's timely in Illinois where we've operated this estate for four years. I'm not trying to be obstinate, but... No, I didn't think you were being obstinate. You're doing your job. I don't think there's a dispute as to whether it was timely as to the $4,000, but I don't know about the rest. Well, frankly, I don't find the, if we can call it evidence, that they've raised as compelling. We have an affidavit in the record of this case from Mr. Jameson Francois saying that he had to tell Mr. Bennett to continue to go back to Georgia for his music business because Mr. Bennett wanted to continue to see his family and friends and remain here in Illinois. His voter registration card was here. Domicile has to do with Mr. Bennett's intent, right? And so the fact that he had a business address for his LLC, which his manager filled out the application and sent the application... Counsel, doesn't all that go to a strong argument for the evidence you're hearing? No, because... You have some good evidence. They have some good evidence. It's in the record, and their evidence was filed a day before the hearing, and they didn't file any sort of motion to extend... So it comes down to time limits as opposed to what actually is the case. In this case, I agree with Judge Garcia that, yes, it was not filed timely. It should have been continued for a hearing if they had asked for that. Let me continue into an equitable tolling argument, then. If I was to conspire to have someone murdered, I later died, and I did so, but I conspired to have someone murdered so I could put it in one of my songs so I would make more money, and later on I died, should the beneficiaries of my estate profit from that, or should the decedent that I helped to contract for their killing, shouldn't they be able to bring a cause of action against my estate? Wouldn't that be a proper use of equitable tolling? Under Illinois law, there is absolutely no discretion for equitable tolling.  12-18, yet. There is not right now. Ellis doesn't apply. The Epstein case, I believe the quote from that case is, a court has no power or jurisdiction to entertain a petition against an estate after the statutory period has passed. So that is the current state of the law in Illinois. Agreed. Yes. I'd like to ask you about the LLC and how that ties in with all of this. An LLC is generally its own entity, would have its own attorney. How does the trial court say that a claim can or cannot lie against an LLC when the LLC is not a party? The LLC didn't have any representation. Are you talking about forever and a day LLC? The LLC that holds the assets of the estate? I know there are two LLCs, so I apologize. The one that holds the intellectual property assets. Okay. Yeah, so the reason why the claim can't be brought against the LLC is because in the underlying civil complaint, there are no allegations. The Cook County complaint you mean? Yes. Okay. There are no allegations of any actions taken by forever and a day LLC after Mr. Bennett's death. It was created after the death. The allegations of murder for hire, conspiracy, those were all wrongdoings that were allegedly taking place before Mr. Bennett's death. So if there is a claim against forever and a day LLC that arises during its operation, I agree that is a different scenario than what we have here. So if hypothetically the Cook County complaint were amended to include claims that forever and a day LLC did something, those claims, I mean 18-12 wouldn't have anything to do with it. Is that fair? Yeah, I agree with you there. Okay. But that's not what we have before us right now. Okay. Thank you. I wanted to finally raise something that your honors had noticed, and that is on the petitioner's continuing use of the venue statute here, which I believe is inapplicable. The venue statute does not suggest whether or not there is jurisdiction in Illinois. And, again, there was discussion about liability insurance not being explored in the underlying court. That wasn't raised. I'd also say that these allegations are for intentional acts, which I've never seen a liability policy that ensures intentional acts. So with that, unless there's questions, I'll rest. Justice Edel? I'm going to give the answer to Michael. Thank you. All right, thank you, Ms. Friedland. Thank you. Mr. Edwards? Just a few points, your honors. With regards to the LLC, we had made arguments in our response to the motion for disallowance that the LLC – claims against the LLC include IAD claims. And those are in part from the continuing – the music that's still out there that the decedent had produced. The LLC owns that music and has still kept that music out. And so we've made the allegation that those are IAD claims that still affect at least the estate of Carleton Weekly. In your Cook County complaint, you've done the – Pardon? In your Cook County complaint, you've done the – No, this was argued in our response regarding to the fact that the estate – I understand, but you haven't amended your complaint to include those. We have not at this point. We were up in – we had a hearing on Thursday, and some counts have been dismissed. But, no, we have not amended our complaint yet. So to the LLC's point, we have some claims of IAD for the ongoing – the music that's still out there that's still ongoing causing harm to the estate. Secondly, I know there was some discussion about Ms. Chambers' intent with regard to the petition. And I just want to bring up, which is important, why this court should supplement the record and take into consideration the Georgia estate. Because the court-appointed guardian ad litem made an independent finding that at the time of the decedent's death, his net worth was somewhere between $400,000 and $700,000. So that's a stark difference than the $4,000 that was put into the petition for letters of administration. Now, we haven't ruled on the admissibility of this yet, but I do have a question. Let's say that we say it can come in. What was the basis for that evaluation? Do you know? We had no contact with the – So you don't know? Correct. We don't know. But it was independent, and so – You don't know if it includes forever and a day? We don't know if it includes forever and a day. We don't know if it includes get-back-day. This was a totally independent evaluation. And I think it's persuasive for the court to take into consideration, based on the allegations that we said of misrepresentation. With regards – I know there was some issues or there was discussion about Jameson Francois' statement. I think his statement is a prime example of why, at the very least, there needs to be an evidentiary hearing. He was the decedent's manager during his time while he was living. I just want to point out that the state put forth evidence of a voter registration card to say that he was domiciled in Illinois. I just want to point out that that voter registration was issued after his death. It was issued in line with some of the COVID protocols of mail forwarding a new voter registration. Same with the Illinois ID card. The state holds that, oh, the decedent had an Illinois ID, and he was domiciled in Illinois. And that's not persuasive. Most law-abiding citizens don't change their address on their ID in 30 days, as the law requires. Let me ask you this. In terms of an evidentiary hearing, domicile was the central inquiry, if not the only inquiry. It was his intent. And he can't testify because he's dead. So do we have any evidentiary problems with relating to having an evidentiary hearing? That goes to the crux of the motion for the court to take judicial notice of that video. That video is not just some abstract video on the Internet. It has like four or five million views. It's still up on YouTube. And it's from a widely known podcaster, which is really akin to some kind of hip-hop journal. So I think there will be no evidentiary issues on that because it's decedent's words, and it's in a publicly available place that can be readily identified and authenticated. And to those motions being untimely, I just want to point out to this court that those motions, with regards to the motion to strike the estate's affidavits and the motion to have judicial notice of the video, those were akin to motions in lemonade. They were only untimely in part because we gave the estate an extra week to file a response. So now we're being penalized. If you were to go back to the record, I believe their response was due a week. They filed their response a week before the January 3rd court order said to do so. And we did so without objection. But then after we reviewed it, we filed motions. Now we're late. So I just want to bring that up to the court. The fault is considered, Your Honor. We're asking this court, again, to vacate this estate, send the matter to Georgia. But if this court decides to, is inclined to not make a determination on jurisdiction, we ask that at the very least we let our claims proceed based on the equitable principles outlined in the argument. Counsel, before you walk away, do you have a citation for Ellis? Because I don't remember seeing it in your book.  Yeah. In regards to the statement of Ellis, that is 236-2D-45-2009, Illinois Supreme Court. And I know that came up in the discussion. That case is, you know, we present a very unique claim to this court, unlike many probate claims, unlike any other probate claim this court may have seen. So this Ellis case is very instructive on when fraud prevents a claimant from bringing good facts. Thank you for your time. Thank you, Mr. Edwards. The court thanks both sides for stewarded argument. We will take the matter under advisement and issue a decision in due course. Court is adjourned until the next argument. Thank you very much.